**NORTHERN IMPROVEMENT COMPANY, a corporation, Plaintiff and Respondent,**

**v.**

**Ted ST. PETER,** individually and as secretary-treasurer of General Drivers, Helpers, Warehousemen, Dairy Employees and Inside Workers Union, Local 116, A. F. L.; General Drivers, Helpers, Warehousemen, Dairy Employees and Inside Workers Union, Local 116, A. F. L.; Tom Tollefson, individually and as business agent of International Union of Operating Engineers, Local 49, A. F. L.; International Union of Operating Engineers, Local 49, A. F. L.; A. F. Wonderlich, Jr., individually and as president of International Brotherhood of Electrical Workers, Local 1426, A. F. L.; International Brotherhood of Electrical Workers, Local 1426, A. F. L.; William A. Terwedo, individually and as business agent of Common Laborers Union, Local 1160, A. F. L.; Common Laborers Union, Local 1160, A. F. L.; Burdeen A. Holland, individually and as president of Plumbers and Steamfitters Union, Local 338, A. F. L.; Plumbers and Steamfitters Union, Local 338, A. F. L.; Leo R. Otto, individually and as business agent of Carpenters Union, Local 1176, A. F. L.; Carpenters Union, Local 1176, A. F. L.; W. W. Murrey, as president of North Dakota State Federation of Labor, Defendants and Appellants.

No. 7547.

Supreme Court of North Dakota.

Dec. 5, 1955.

Rehearing Denied Jan. 17, 1956.

Lanier, Lanier & Knox, Fargo, for appellants. Erwin A. Peterson, St. Paul, Minn., of counsel.

Wattam, Vogel, Vogel, Bright & Peterson, Fargo, for respondents.

BURKE, Chief Justice.

In this action for an injunction, a temporary injunction was issued enjoining the defendants and all persons acting for the defendants, either directly or indirectly, from picketing and bannering the Front Street project in Fargo upon which the plaintiff, Northern Improvement Company, was working. The Northern Improvement Company is a corporation engaged in general contracting and at the time the temporary injunction was issued was engaged in repaving Front Street of Fargo pursuant to contract. The cost of the project was to be defrayed by contributions from the United States, the State of North Dakota and the City of Fargo.

The principal defendant, Ted St. Peter, is the secretary and treasurer of the General Drivers, Helpers, Warehousemen, Dairy Employees and Inside Workers Union, Local 116 A. F. L. The other defendants are officers or agents of other labor organizations.

Ted St. Peter asked the plaintiff to bargain with his union, Local 116 A. F. L., in connection with wages and working conditions on the Front Street project. The plaintiff refused to bargain upon the ground that the union did not represent a majority of its employees on the project and that therefore it could not lawfully bargain with such union. The plaintiff suggested on July 12, 1955, that its employees vote by secret ballot to determine what bargaining agent, if any, such employees wished to represent them. The union refused to agree to an election. On July 14, and 15, 1955, individuals who were not employees of the plaintiff picketed the Front Street project, carrying signs stating that the Northern Improvement Company refused to bargain with Fargo Unions. During picketing, work on the project was stopped because union employees of other contractors and subcontractors on the project refused to cross the picket lines.

On July 22, 1955, the district court made its order granting the temporary injunction and the defendants have appealed from that order. Their attack is twofold. First, they claim that the state court was without jurisdiction to order the injunction, the subject matter having been preempted by the Federal Government under the National Labor Relations Act, 29 U.S.C.A. § 151 et seq.; and second, that the injunction violates the first amendment to the Constitution of the United States in that it denies the defendants freedom of speech.

█ The first question to be decided is whether the plaintiff, as the employer upon the Front Street Project, was subject to the National Labor Relations Act. The answer to that question depends upon whether the project, or the interference with the progress of the project had any substantial

effect upon interstate commerce. If interstate commerce was substantially affected, the Labor Relations Act applied.

 Front Street in Fargo through its entire extent is an integral part of Federal Highways 10 and 52 and a substantial part of the cost of its resurfacing was being paid for by the United States. The total cost of the project was to be $736,000. A subcontract for the electrical work upon the project, in a sum in excess of $200,000 was let to a Minnesota Corporation. All sand and gravel for the project, of the total value of $35,000 had been shipped or was to be shipped interstate from Minnesota. Other materials in substantial amounts for use in the completion of this project, had been or would be shipped from outside the State of North Dakota. They included oil, gasoline, steel and cement. In fact practically all the raw and manufactured materials used or to be used on the project were to come from without the State of North Dakota.

The purpose of establishing and building federal highways is to facilitate the movement of interstate commerce. Delay in the completion of such projects caused by stoppage of work thereon would obviously have some effect upon the flow of interstate commerce. The National Labor Relations Board has held that this effect alone is sufficient to bring the employer of labor upon a federal highway project within its jurisdiction, Strong Co. and International Association of Machinists, 86 NLRB No. 100, In re Brown-Ely Co. & International Association of Machinists, 87 NLRB No. 5.

The fact that raw and manufactured materials in very substantial amounts and of substantial value have been or must be shipped in interstate commerce in order to complete the project also brings the project within the jurisdiction of the Labor Board. One of the purposes of the National Labor Relations Act was to prevent industrial strife or unrest from "materially affecting, restraining, or controlling the flow of raw materials or manufactured or processed goods from or into the channels of commerce." 29 U.S.C.A. § 151, Paragraph 1.

In National Labor Relations Board v. Denver Building & Const. Trades Council, a case which involved the stoppage of work upon a building contract, where the contractor purchased a substantial portion of the materials used, from without the state, the Supreme Court of the United States approved a finding by the Labor Board "that any wide spread application of the practices here charged might well result in substantially decreasing the influx of materials into Colorado from outside the State", and also stated; "The fact that the instant building, after its completion, might be used only for local purposes does not alter the fact that its construction, as distinguished from its later use, affected interstate commerce." 341 U.S. 675, 71 S.Ct. 943, 949, 95 L.Ed. 1284. This principle was affirmed in International Brotherhood of Electrical Workers v. National Labor Relations Board, 341 U.S. 694, 71 S.Ct. 954, 95 L.Ed. 1299.

It is apparent from the evidence in this case that the stoppage of work on the Front Street project will stop or delay "the influx of materials" in the State of North Dakota. The evidence thus establishes that the project and the contractor thereon are subject to the Labor Relations Act.

 The controversy between the employer and the defendants is a simple one. The unions demanded the right to bargain for the employer's employees and the employer refused. The picketing was for the purpose of coercing the employer to bargain. There is an allegation in the complaint that the purpose of the picketing was to induce the employer to violate the state law by coercing its employees to join a union. There is, however, no evidence to sustain this allegation. It is clear under the evidence that either the employer or the defendants had engaged in an unfair labor practice under the Labor Relations Act. This act covers the whole field of collective bargaining where interstate commerce is affected. It sets forth the conditions under which the refusal of an employer to bargain collectively and coercion by

a labor union to compel an employer to bargain constitute unfair labor practices. 29 U.S.C.A. § 158. Whether, in the circumstances, the picketing constituted an unfair labor practice, was a matter for the Labor Relations Board to decide. If it found that the picketing was an unfair labor practice it had the jurisdiction to issue a "cease and desist" order or to apply to the United States Courts for an injunction. 29 U.S.C.A. § 160(e).

It is contended by the plaintiff, however, that the state courts also had jurisdiction to enjoin the picketing because of the violation of a specific state statute. This statute is Section 34-0912, 1953 Supp. to NDRC 1943. It provides:

> "In any strike in this state it shall be illegal for any person other than an employee of the particular establishment against which such strike is called or a local resident member of the union representing the employees of such establishment to picket in aid of such strike. Picketing in violation of this section is hereby declared to be unlawful and against the peace and dignity of the state and shall be subject to restraint by the district court of the county where such picketing occurs."

There are several reasons urged by the defendants as to why this statute does not apply to the facts of this case. The most important one, however, is that where interstate commerce is affected and Congress has enacted federal legislation covering the same field as state legislation, the state legislation must give way to the federal. In a case which had its origin in Pennsylvania and in which the facts were analogous to those in the instant case, the Supreme Court of the United States stated: "Congress has taken in hand this particular type of controversy where it affects interstate commerce", and after pointing out the conflicts that might arise out of concurrent jurisdiction concluded that "there is no indication that the statute left it open for such conflicts to arise" and that therefore the state court was without jurisdiction. Garner v. Teamsters, Chauffeurs and Help-

ers Local Union No. 776, 346 U.S. 485, 74 S.Ct. 161, 165, 98 L.Ed. 228. See also Building & Const. Trades Council v. Kinard Construction Company, 346 U.S. 933, 74 S.Ct. 373, 98 L.Ed. 423; Weber v. Anheuser-Busch, Inc., 348 U.S. 468, 75 S.Ct. 480, 99 L.Ed. 546.

It is thus settled by the highest federal authority that in cases, such as the instant one, the state courts are without jurisdiction. Having reached this conclusion it is unnecessary to consider the other issues in the case. The order of the District Court granting the injunction is therefore reversed and the injunction issued is ordered to be dissolved.

GRIMSON, JOHNSON, SATHRE and MORRIS, JJ., concur.